IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIMBERLY MANNING,

        Plaintiff,

   v.

VICTORIA'S SECRET STORES, LLC,

        Defendant.

No. 3:15-cv-00693-HZ

OPINION & ORDER

Bruce Colven
Thomas E. Hojem
Ben Shafton
Caron, Colven, Robison and Shafton
900 Washington St., Ste. 100
Vancouver, WA 98660

    Attorneys for Plaintiff

Robert Spajic
Stephen M. Raab
Gordon & Polscer, LLC
9755 SW Barnes Rd., Ste. 650
Portland, OR 97225

    Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Kimberly Manning filed this suit after she slipped and fell at a Victoria's Secret store at a mall in Clackamas, Oregon. Defendant Victoria's Secret Stores, LLC removed the case to this Court based on diversity jurisdiction and now moves for summary judgment. Manning claims that she slipped on a piece of Victoria's Secret marketing that had fallen on the floor. She did not, however, produce any evidence from which a reasonable juror could conclude that Victoria's Secret was negligent in failing to discover and remove the sign in a timely fashion, or warn Manning about the hazard. Therefore, Victoria's Secret's motion for summary judgment is granted, and this case is dismissed.

## STANDARDS

Kimberly Manning is a resident of Vancouver, Washington, who visited the Victoria's Secret Store at the Clackamas Town Center Mall in Oregon on July 9, 2014. Spajic Decl. Ex. A ("Manning Dep.") 3:16–19; Complaint ¶¶ 5–6, ECF 1. A sign announcing a sale on bras caught Manning's eye, and she headed for the display table near the back of the store. Manning Dep. 21:6–14. She moved around the table, hunting her size, but suddenly slipped and crashed to the floor, striking it hard with her left knee and wrist. Manning Dep. 21:11–22:11. She felt dazed. Manning Dep. 26:6. As she pulled herself up, Manning discovered the alleged culprit: a large promotional sign, poking out from underneath the bra table. Manning Dep. 25:5, Hojem Decl. ¶ 2, ECF 42.

The stories diverge here. The store manager, Meaghan Gurrad, testified that she was the first person to encounter Manning after the fall. Spajic Decl. Ex. C ("Gurrad Dep.") 19:6–9. As Gurrad exited the store's back stockroom, she saw Manning "in the process of getting up" from the floor. Gurrad Dep. 18:15–19:16. Gurrad walked over and helped Manning to her feet, and the

two spoke briefly about the fall. Gurrad Dep. 20:2–22. Gurrad picked the sign off the ground, and rearranged some bras so she could "put [the sign] back onto the table." Gurrad Dep. 21:12–13. Gurrad asked if Manning was okay and then excused herself to fetch an incident report from the back room. Gurrad Dep. 20:18–21:5. Manning moved to the register and was speaking with another Victoria's Secret associate there when Gurrad returned, ready to fill out the paperwork. Gurrad Dep. 22–25.

Gurrad described the slippery scourge as a "piece of [Victoria's Secret] marketing," a "three-dimensional object" not "fully in its three-dimensional form[.]" Gurrad Dep. 32:1–8. It was, in Gurrad's words, "like a rectangle tilted a little bit, maybe . . . still definitely 3-D, but . . . not in perfect condition." Gurrad Dep. 32:9–15. "There was a . . . partial footprint on it," she said, and it looked like someone had stepped on it. Gurrad Dep. 32:18–21. The sign was about three feet long, and sixteen inches wide. Spajic Decl. ¶ 9, Ex F.

Manning also described her encounter with a Victoria's Secret employee immediately after her fall. She insists, however, that "[i]t wasn't Meaghan" who first emerged from the back room, but a young "gal [with] dark hair." Manning Dep. 25:13–16, 28:20–23. Manning saw the employee and asked "[w]hat the f*** is that doing on the floor?" Manning Dep. 25:7 And, according to Manning, the unidentified employee said "[o]h customers knock it off all the time." Manning Dep. 25:11–12. The employee "didn't seem like she cared" that Manning had fallen. Manning Dep. 85:1–3. "All she did," Manning said, "was pick up the sign and put it back on the table" and leave the scene. Manning Dep. 25.18–19. Manning moved to another display, chose an item to purchase, and as she waited for an available register, realized she was hurt. Manning Dep. 26:6–11. Once she reached the counter, she told another Victoria's Secret employee what had happened, and asked to speak with a manager. Manning Dep. 26:6–13. It was here at the

3 – OPINION & ORDER

register that Manning claims she met Gurrad; Manning said Gurrad apologized about the incident, then left to grab the paperwork from the back of the store. Manning Dep. 26:14–27:21.

Manning contends that the sign she slipped on was not a flattened three-dimensional one several inches thick, but rather a glossy "marketing sleeve" that laid flat on the ground. Hojem Decl. ¶ 4; Manning Dep. 9:12–18. According to Manning, the sign at issue is really two parts: an inner structure (either a rectangular box or an oval-shaped cardboard frame) and an outer "marketing sleeve" that slips over the inner structure "much like a pillow case over a pillow." Pl. Resp. at 2, ECF 41; Hojem Decl. ¶ 4; Hojem Decl. Ex. C ("Foltz Dep.") 28:11–31:25, ECF No. 42-3.

Shannon Soule was working as a Customer Sales Lead ("CSL") at the Clackamas Victoria's Secret store when Manning fell. Spajic Decl. Ex. B ("Soule Dep.") 11:2–5, 14:14–16, ECF 40-2. As a CSL, Soule was responsible for monitoring and maintaining the store's overall appearance, cleanliness, visual appeal, and safety. Soule Dep. 12:10–20. To keep tabs on all of these areas, Soule continuously patrolled the store in a "figure eight" pattern to reach "every corner of the store within a few minutes ideally." Soule Dep. 13:20–25. Apparently, the duties of CSL rotated between associates throughout the day; for each one- to two-hour CSL stint, the employee continuously looped through the store in this figure-eight pattern. Soule Dep. 14:1–13.

Soule learned of Manning's fall from Gurrad as she was filling out the incident report. Soule Dep. 15:18–23. Gurrad asked Soule if she had witnessed Manning's fall; she had not. Soule Dep. 15:25–16:1. Gurrad then asked Soule when she had last been in the area where Manning fell; Soule thought it had been about ten minutes. Soule Dep. 16:2–5. Soule remembered walking through the store in the figure-eight pattern during that time, but could not

specifically remember her trip through the back of the store. She did not remember seeing anything on the floor. Soule Dep. 17:3–7.

Manning filed suit against Victoria's Secret in state court. She alleged that Victoria's Secret was negligent in "fail[ing] to keep [its] premises reasonably safe . . . by allowing the sign to remain on the floor[,] fail[ing] to inspect the premises and discover the presence of the sign, which created an unreasonable risk of harm[,] fail[ing] to eliminate the presence of the sign, thereby creating that risk on the premises[, and] failing to warn [Manning] of the presence of the sign[.]" Compl. ¶ 11 (some capitalization omitted). Manning claims that the fall caused permanent injuries to her spine, and she seeks damages up to $250,000. Compl. ¶¶ 12–14. Victoria's Secret, a Delaware company with a principal place of business in Ohio, removed the case to this Court based on diversity jurisdiction. Notice of Removal at 2, ECF 1. Now before the Court is Victoria's Secret's motion for summary judgment. Def. Mot. at 2, ECF 39.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28


specifically remember her trip through the back of the store. She did not remember seeing anything on the floor. Soule Dep. 17:3–7.

Manning filed suit against Victoria's Secret in state court. She alleged that Victoria's Secret was negligent in "fail[ing] to keep [its] premises reasonably safe . . . by allowing the sign to remain on the floor[,] fail[ing] to inspect the premises and discover the presence of the sign, which created an unreasonable risk of harm[,] fail[ing] to eliminate the presence of the sign, thereby creating that risk on the premises[, and] failing to warn [Manning] of the presence of the sign[.]" Compl. ¶ 11 (some capitalization omitted). Manning claims that the fall caused permanent injuries to her spine, and she seeks damages up to $250,000. Compl. ¶¶ 12–14. Victoria's Secret, a Delaware company with a principal place of business in Ohio, removed the case to this Court based on diversity jurisdiction. Notice of Removal at 2, ECF 1. Now before the Court is Victoria's Secret's motion for summary judgment. Def. Mot. at 2, ECF 39.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28

(9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324). The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

## DISCUSSION

Oregon law governs this diversity action. Maricopa County of State of Arizona v. Maberry, 555 F.2d 207, 210 (9th Cir. 1977). "Under Oregon premises liability law, the duty that a proprietor owes to an entrant depends on whether the entrant is an invitee, licensee, or trespasser." Conrad v. Jackson Cty., No. 1:13-CV-00756-CL, 2014 WL 5040316, at *4 (D. Or. Oct. 8, 2014) (citing Walsh v. C & K Market, Inc., 171 Or. App. 536, 539, 16 P.3d 1179 (2000)). There is no dispute that Manning was a business invitee of Victoria's Secret when she fell in the store. See Parker v. Hull Lumber & Plywood Co., 260 Or. 1, 8, 488 P.2d 454 (1971) (defining "invitee" as "one who comes upon the premises at the occupier's invitation, express or implied, upon business which concerns the occupier").

Oregon common law "imposes a general, nondiscretionary duty on landowners to make their property reasonably safe for their invitees." Hughes v. Wilson, 345 Or. 491, 497, 199 P.3d 305 (2008). An invitee who is injured by slipping on a foreign substance on the floor of a business property can only recover damages if she can show either:

    (1) the substance was placed there by the occupant of the property;
    (2) the occupant knew that the substance was there and failed to use reasonable diligence to remove it; or
    (3) the substance had been there for so long that the occupant should, in the exercise of reasonable diligence, have discovered and removed it.

Conrad, 2014 WL 5040316 at * 4 (quoting Rex v. Albertsons's Inc., 102 Or. App. 178, 181, 792 P.2d 1248 (1990)). An occupant could also be liable if it negligently created a display that posed an unreasonable danger to its customers. Hagler, 354 Or. at 144–45. Manning's sole claim for relief—that Victoria's Secret was negligent by failing to discover the sign and either remove it from the floor or warn her of its presence—falls under the third theory. See Compl ¶ 11.

Oregon law does not impose strict liability against a business for every slip-and-fall accident that occurs on the premises. Hagler v. Coastal Farm Holdings, Inc., 354 Or. 132, 141, 309 P.3d 1073 (2013) ("The role of the possessor, however, is not that of an insurer against accidents upon the premises even as to persons whom they have invited to enter. And the mere fact that an invitee was injured on the premises does not, by itself, give rise to an inference of negligence.") (citing Starberg v. Olbekson, 169 Or. 369, 373–74, 129 P.2d 62 (1942)) (internal citation and quotation marks omitted). "[F]or there to be a triable issue as to whether defendant's conduct did or did not meet the appropriate standard of care, there must be evidence of defendant's conduct." Dubry v. Safeway Stores, Inc., 70 Or. App. 183, 186, 689 P.2d 319 (1984). In other words, the presence of the sign on the floor is not sufficient to impose liability. Conrad, 2014 WL 5040316 at *5 (citing Dubry, 70 Or. App. at 186). Rather, under this third theory of liability, "there must be some evidence of how long the offending material was on the floor" for the jury to analyze whether the defendants breached their duty by failing to discover and remove it. Id. (quoting Dubry, 70 Or. App. at 189). Without evidence about how long the substance was on the floor, it is "just as probable that the substance was spilled immediately before the accident as it was spilled three hours previously or at any other time," and thus there is no reasonable basis for a jury to conclude that the defendant was negligent. Weiskopf v. Safeway Stores, Inc., 271 Or. 630, 632, 533 P.2d 347 (1975).

7 – OPINION & ORDER

The only evidence in the record about how long the sign was on the floor is testimony from Ms. Soule that she had passed through the area about ten minutes before the incident and did not notice the large sign or anything else on the ground. That evidence is insufficient to create a question of fact as to whether the sign was on the ground for such a period of time that a Victoria's Secret employee should have discovered it with reasonable diligence. See Feazle-Hurt v. Target Corp., No. 3:12-CV-00997-AC, 2013 WL 5797601, at *6 (D. Or. Oct. 28, 2013) (granting summary judgment for premises owner when the only evidence regarding the time the foreign substance on the ground was from an employee who testified that he walked through the area approximately ten minutes prior and did not see the substance); Van Den Bron v. Fred Meyer, Inc., 86 Or. App. 329, 331–32, 738 P.2d 1011 (1987) ("The only evidence as to how long the water had been there was the produce manager's testimony that he had mopped the floor approximately two hours before plaintiff's fall and that it was his habit to mop every 20 minutes or so[,] and . . . testimony from the plaintiff that the puddle of water she slipped on 'look[ed] pretty fresh. . . .' Given that evidence no reasonable inference can be drawn as to how long the water was on the floor."). Even if a jury found incredible Soule's claim that she was in the area of Manning's fall approximately ten minutes before the incident, Manning's failure to produce any other evidence about the length of time the sign was on the floor is fatal to her claim. Weiskopf, 271 Or. at 632–33; Dubry, 70 Or. App. 188–89.

Manning argues for the first time in response to summary judgment that a "jury must decide whether the sign that caused [Manning] to fall was 'placed there' by a Victoria's Secret employee." Pl. Resp. at 1. Manning's new theory is that a Victoria's Secret employee might have " 'placed' the sign in an unreasonably dangerous place (i.e., on or near the floor)" by storing the

8 – OPINION & ORDER

flat marketing sleeve under the display table. But even a broad reading of her complaint does not encompass such a theory:

> The fall in question was caused by the negligence of [Victoria's Secret] in one or more of the following particulars:
>
> a. Failure to keep premises reasonably safe for [Manning] by allowing the sign to remain on the floor;
> b. Failure to inspect the premises and discover the presence of the sign, which created an unreasonable risk of harm to [Manning];
> c. Failure to eliminate the presence of the sign, thereby creating that risk on the premises;
> d. Failing to warn [Manning] of the presence of the sign so as to enable [her] to avoid the harm.

Compl. ¶ 11. Every one of these alternative "theories" is simply a restatement of the third theory of premises liability set out above: that "the substance had been there for so long that the occupant should, in the exercise of reasonable diligence, have discovered and removed it." Conrad, 2014 WL 5040316 at * 4 (citation omitted). Manning cannot raise a new theory at this late stage. Patel v. City of Long Beach, 564 F. App'x 881, 882 (9th Cir. 2014) (a party "cannot raise a new theory for the first time in opposition to summary judgment.") (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292–93 (9th Cir. 2000)).

  Even if Manning could proceed on this theory, she has offered nothing other than speculation that the sign might have been stored under the table, and that is not sufficient to avoid summary judgment. Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). Manning's counsel's attempt to manufacture evidence to support this speculative theory from his email exchange with a Victoria's Secret employee is not well taken. See Pl. Resp. at 4–5.

Manning repeatedly challenges Victoria's Secret's description of the sign at issue. Manning claims that the sign was "flat, as if a sheet of glossy paper of card stock lay flat on the floor." Pl. Resp. at 2. Victoria's Secret insists that the sign was a three-dimensional marketing cylinder approximately four inches thick. Def. Mot. at 3. The shape of the sign is immaterial to resolving the question here—whether a reasonable juror could conclude that Victoria's Secret was negligent for failing to notice the sign, for failing to warn Manning about the sign, or failing to clean up the sign. See Compl. ¶ 11. There is uncontroverted testimony that a Victoria's Secret employee was in the vicinity of Ms. Manning's fall about ten minutes before the incident and did not notice the large sign on the ground. No reasonable juror could conclude from this evidence that Victoria's Secret was negligent regarding the sign, no matter its shape. Accordingly, Victoria's Secret's motion for summary judgment is granted.

## CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment [39] is granted. All other outstanding motions are denied.

IT IS SO ORDERED.

Dated this  19  day of  April , 2016.

_____
MARCO A. HERNÁNDEZ
United States District Judge

10 – OPINION & ORDER